UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAIDLAW ENERGY AND
ENVIRONMENTAL, INC.,

                    Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                      08-CV-32-S
TOWN OF ELLICOTTVILLE, NEW YORK,

                    Defendant.

## I. INTRODUCTION

        In this action, Plaintiff asserts claims under the Fifth and Fourteenth Amendments

of the United States Constitution pursuant to 42 U.C.S. § 1983.  Plaintiff's claims arise out

of Defendant's decision to deny Plaintiff's site modification application and classify the

operation of a power generation facility a non-conforming use under local zoning laws.

Plaintiff seeks a declaratory judgment that Plaintiff did not abandon or vacate its power

generation facility, an order declaring the denial of its application unconstitutional, an order

directing Defendant to approve the application, and money damages in the amount of

$10,000,000, in addition to attorneys' fees and litigation costs.  Presently before this Court

is Defendant's Motion to Dismiss Plaintiff's complaint in its entirety.  For the reasons

discussed below, Defendant's motion to dismiss is granted.[1]

_____

        [1]In support of its Motion to Dismiss, Defendant filed the Declaration of Ivan E. Lee, Esq.; a
Memorandum of Law; and the Declaration of Daniel A. Spitzer, Esq. with attached Exhibits and Reply
Memorandum.  (Docket Nos. 5, 6, 22.)
        In opposition to Defendant's Motion to Dismiss, Plaintiff filed the Declaration of James P. Evans,
Esq.; separately filed Exhibits; a Response Memorandum, twice submitted due to a filing defect; an
Amended Response Memorandum; the Declaration of Michael B. Bartoszek;  and the Affidavit of David C.
Crowther, Esq.  (Docket Nos. 12, 13, 14, 15, 16, 19, 20.)

## II. BACKGROUND

### A.    Facts

In adjudicating Defendant's motion to dismiss, this Court assumes the truth of the following factual allegations contained in the complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff, Laidlaw Energy and Environmental, Inc. ("Laidlaw"), is a corporation organized and maintained under the laws of New York, with its principal offices in New York County, New York.  (Complaint ("Comp."), Docket No. 1, ¶ 5.)  Defendant, the Town of Ellicottville ("Town" or "Ellicottville"), is a duly constituted political subdivision of New York, with its principal offices in the Town of Ellicottville, Cattaraugus County, New York. (Id. ¶ 6.)  The parties' dispute centers around a facility (the "Co-Generation Plant") located inside Ellicottville, along Route 219 North.  (Id. ¶ 9.)  The facility is, and was at all relevant times, composed of two principal components: First, lumber kilns that prepare hardwood lumber for use in furniture production; and, second, co-cycle combustion turbine and steam turbine generators working in conjunction to produce heat and electricity.  (Id. ¶ 15.)  The generated electricity powered the lumber kilns, while the excess electricity was sold to New York's electric power grid.  (Id. ¶ 5.)

Throughout its existence, the Co-Generation Facility has been owned and controlled by various parties and used a variety of fuels to produce the heat and electricity necessary to keep the lumber kilns active.  From 1990 to 1999, the Co-Generation Facility was owned and operated by Ellicottville Energy, Inc. ("EEI"), a company owned by the Northrup family. (Id. ¶ 14.)  Laidlaw alleges that throughout its ownership, EEI made various changes to the

2

Co-Generation Facility, some authorized, others not.  (Id. ¶ 18.)  For example, from 1994-1997, EEI added, without express authorization, a biomass gasification system, fueled by the combustion of wood chips delivered to the facility.  (Id. ¶ 20.)  This addition also featured a 60-foot-tall smoke stack.  (Id.)  Later, in 1998, EEI applied for, and was granted, a zone change to allow biomass combustion by wood pellets.  (Id. ¶ 21.)  Within a year, however, EEI dismantled that system.  (Id.)

Laidlaw purchased the facility in 1999.  (Id. ¶ 25.)  Following the purchase, Laidlaw applied for, and was granted, a permit to expand the Co-Generation Facility's kiln equipment.  (Id. ¶ 26.)  However, in August 2002, rising natural gas prices made continued operation of the Co-Generation Facility cost-prohibitive.  (Id. ¶ 27.)  On August 29, 2002 Laidlaw's facility was placed in receivership, until new investors helped Laidlaw purchase a new round of bonds in May 2004.  (Declaration of Ivan E. Lee. In Support of the Town of Ellicottville's Motion to Dismiss ("Lee Decl."), Docket No. 5, Ex. A; Ex. A to Declaration of James P. Evans, Esq., Docket No. 14.)  Both during and after the receivership period, Laidlaw "temporarily curtailed its operation of the Co-Generation Facility," by reducing the facility's staff to a single individual responsible for equipment maintenance.  (Comp. ¶¶ 28-29.)

The search for affordable fuel sources led Laidlaw to obtain a $1 million grant from New York State to convert the facility from the use of natural gas over to biomass fuel.  (Id. ¶ 31.)  This grant was contingent on Laidlaw's continuing operation of the Co-Generation Facility.  (Id.)

In October 2004, Laidlaw applied to the Ellicottville Planning Board for a Modified Site Plan Approval ("MSPA") to modify the facility to accommodate biomass fuel.  (Id. ¶

3

33.)  Laidlaw also initiated an environmental impact review pursuant to the New York State Environmental Quality Review Act ("SEQRA").  (Id. ¶ 34.)  Ellicottville assumed "lead agency status" in the SEQRA review, and thus became responsible for issuing a Findings Statement for Laidlaw's project.  (Id. ¶ 37.)

In considering Laidlaw's MSPA, Ellicottville retained special counsel to review Laidlaw's application and use of the Co-Generation Facility's site.  (Id. ¶ 41.)  On the basis of that review, the Town determined that conversion of the facility to biomass fuel would constitute an unauthorized expansion of a prior non-conforming use.  (Id. ¶ 43.)  To reach this decision, the Town found that Laidlaw's prior operation of the facility using natural gas was a permitted "prior non-conforming use."  This meant that, although Ellicottville's zoning codes did not permit Laidlaw's power production, because the facility began operating before those codes came into effect, Laidlaw could continue generating electrical power. (See id. ¶ 42.)  However, in the Town's view, even this prior use was no longer permitted because Laidlaw had "abandoned" or "vacated" the facility and could not now return and resume an activity in contravention of the Town's zoning codes.  (Id. ¶ 44.)  The Town effectively denied Laidlaw's MSPA and required Laidlaw to apply for various variances and special use permits to restart the Co-Generation Facility as a natural gas fueled plant. (See id. ¶¶ 45-46.)  Laidlaw appealed the Planning Board's decision to the Town Zoning Board of Appeals ("ZBA"), which upheld the Planning Board's decision on June 11, 2007. (Id. ¶ 49.)

Thereafter, the Planning Board completed its SEQRA review and issued a SEQRA Findings Statement on October 18, 2007.  (Id. ¶ 37.)  In that statement, the Planning Board determined that Laidlaw's project would pose significant, adverse, and unmitigable

environmental risks and denied Laidlaw's requested biomass fuel conversion. (Id. ¶¶ 66, 72.)

In both its MSPA and SEQRA decisions, the Planning Board found that Laidlaw could continue operation of the kilns, notwithstanding the fact that these kilns require the energy and heat produced by the facility's combustion and steam turbine generators. (Id. ¶¶ 50, 68.)

Plaintiff now seeks a declaratory judgment finding that Laidlaw did not abandon the Co-Generation Facility, as well as an order declaring that the Town's denial of Laidlaw's MSPA was unconstitutional, and directing the Town to approve that application. Plaintiff also seeks money damages to recoup losses it incurred as a result of the Town's denial.

## B.    Procedural History

On June 11, 2007, Laidlaw filed an Article 78 proceeding in New York State Court seeking review of the ZBA's June 2007 decision affirming the Planning Board's determinations. (Lee Decl., Ex. I.)  That matter is ongoing.  (Defendant's Memorandum of Law Supporting Defendant's Motion to Dismiss, Docket No. 6, 5.)

On November 16, 2007, Laidlaw commenced a second Article 78 proceeding in New York State Supreme Court to challenge the Planning Board's SEQRA Findings Statements.  The court dismissed that action on March 10, 2008 on the basis that the Planning Board's decision was neither arbitrary nor an abuse of discretion. (Lee Decl., Ex. L.)

Plaintiff commenced the present action on January 14, 2008, by filing a complaint in the United States District Court for the Western District of New York.  Defendant originally filed a motion to dismiss Plaintiff's complaint in its entirety on March 26, 2008.

5

Defendant then filed a corrected Motion to Dismiss on March 27, 2008.

### III. DISCUSSION

**A.    Legal Standard**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility is present when the factual content of the complaint allows for a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement; the pleading must show, not merely

6

allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8(a)(2).

A two-pronged approach is thus used to examine the sufficiency of a complaint. First, statements that are not entitled to the assumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away.  See Iqbal, 129 S.Ct. at 1950.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.[2]

## B.   Plaintiff's Fourteenth Amendment Due Process Claims

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.   Due process claims fall into two broad categories– substantive and procedural.   A substantive due process claim is based upon the deprivation of a constitutionally protected life, liberty, or property interest.  See B.D. v. DeBuono, 130 F. Supp. 2d 401, 431 (S.D.N.Y. 2000).  A procedural due process claim is based upon the deprivation of a protected life, liberty, or property interest, without notice and an opportunity to be heard.  Id. at 432-33.  The threshold issue under either claim, "is always whether plaintiff has a property or liberty interest protected by the Constitution."  Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

---

[2]Although seemingly inconsistent with the command to treat well-pleaded factual allegations as true, this plausibility inquiry appears to include consideration of whether more likely or alternative explanations for the complained-of conduct exist.  See, e.g., Iqbal, 129 S.Ct. at 1951-52 ("But given more likely explanations, [the allegations] do not plausibly establish this purpose."); Twombly, 550 U.S. at 567-68 (finding that plaintiff's allegations were not suggestive of antitrust conspiracy in the face of an "obvious alternative explanation" for the allegations in the complaint).

7

1.      **Substantive Due Process Claims**

Plaintiff claims it was deprived of a protected property interest in violation of its substantive due process right by a vague and ambiguous zoning ordinance, as well as by the Planning Board's and ZBA's arbitrary and capricious decisions.  Defendant seeks dismissal of these claims because Plaintiff does not have a valid property interest and failed to allege arbitrary or irrational conduct.

"In assessing a substantive due process claim in the context of land use regulation, this Court is always mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies." Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir. 1995)) (internal quotation marks omitted).  Adjudicating a party's substantive due process claim in the context of a land use regulation is a two-step process. Id.  First, a plaintiff must show that he had a valid property interest within the meaning of the Constitution. Id.  Second, a plaintiff must show that the defendant's actions were arbitrary or irrational.  Id.  Because Plaintiff has failed to meet either requirement, Defendant's Motion to Dismiss will be granted as to Plaintiff's substantive due process claims.

First, Plaintiff has failed to identify a property interest.  Property interest claims involving land-use due process disputes fall into two categories. Osborne v. Fernandez, No. 06-CV-4127 (CS)(LMS), 2009 WL 884697, at *33 (S.D.N.Y. Mar. 31, 2009).  First, a landowner may claim  that he has a "due process right to the existing zoning of [his or her] land." Id. (quoting DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 129-30 (2d Cir. 1998)).  Second, a landowner may claim "a due process right to the issuance of a permit

8

from a local municipal authority under the current zoning laws."  Id.  (citing DLC Mgmt. Corp., 163 F.3d at 132).  Plaintiff claims property rights in both categories.

Concerning the first category, Laidlaw alleges that it had a property interest in its zoning classification.  (Comp. ¶ 89.)  A landowner has no property interest in his existing zoning status unless his rights have become "vested."  DLC Mgmt. Corp., 163 F.3d at 130. A landowner's rights become vested where the landowner made substantial expenditures and undertakes substantial construction prior to enactment of the more restrictive zoning ordinance.  DC3, LLC v. Town of Geneva, No. 10-CV-6084L, 2011 WL 1449040, at *2 (W.D.N.Y. Apr. 12, 2011).  Laidlaw claims it made such an investment by purchasing the Co-Generation Facility from EEI in 1999 in reliance of the site's zoning status.  Whether this suffices to vest Laidlaw's rights is irrelevant, however, because the Planning Board, in rejecting Laidlaw's MSPA, did not change the site's zoning status.  Instead, it recognized that the facility's power production had always been in violation of the current zoning code, but that because this activity commenced prior to the ordinance, it was a permitted non-conforming use.  Even if Laidlaw had a property interest on the basis of its expenditures, no change to that zoning status was made, and thus none of Laidlaw's substantive due process rights were implicated.

Concerning the second category, Laidlaw alleges a property interest in the approval of its MSPA, as well as  approval under SEQRA.  (Comp. ¶¶ 88, 91.)  The Second Circuit applies a "clear entitlement" analysis to such claims.  Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006) (citing Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir. 1995)).  The analysis "focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the

9

authority will make a specific decision." Id. (quoting Zahra, 48 F.3d at 680) (emphasis in original).

There is no dispute that Laidlaw required approval by the Planning Board before converting the Co-Generation Facility to biomass fuel.  Laidlaw must therefore show that approval was either certain or exceedingly likely.  See Cathedral Church of The Intercessor v. Incorporated Village of Malverne, 353 F. Supp. 2d 375, 384 (E.D.N.Y. 2005) (noting that plaintiff failed to "adequately ple[a]d in their complaint that there was a very strong likelihood that their [proposal] should have been approved as it was submitted").  Plaintiff has failed to do so.  Laidlaw has not alleged that there were mandatory town code provisions that required the Planning Board to grant Plaintiff's MSPA.  Similarly, Laidlaw has not identified anything making SEQRA approval a virtual certainty.  To the contrary, this Court finds that the Planning Board properly had discretion, and used it, to deny Laidlaw's MSPA.  See generally N.Y. Town Law § 274-a(2);  Home Depot, U.S.A. v. Town Bd. of Town of Hempstead, 881 N.Y.S.2d 160, 162 (N.Y. App. Div. 2009) ("A town board is authorized to review and approve site plans which describe proposed land use elements . . . .")  Likewise, the Board properly applied its discretion under SEQRA.  See generally Custom Topsoil, Inc. v. City of Buffalo, 785 N.Y.S.2d 637, 639 (N.Y. App. Div. 2004) ("[I]t is well established that, where a municipal officer has a latitude of choice that takes into account the kinds of environmental concerns that may be raised during the SEQRA process, the official's function is discretionary . . . ."); Lucas v. Planning Bd. of Town of LaGrange, 7 F. Supp. 2d 310, 324 (S.D.N.Y. 1998) (town's failure to follow SEQRA requirements does not trigger mandatory procedures).  The Board's exercise of discretion precludes Plaintiff from establishing a property right in the approval of its proposal under

either the MSPA or SEQRA.  See Osborne, 2009 WL 884697, at *34 (noting that "[t]he quantum of discretion a local zoning authority has to approve or reject a request for a permit is almost always dispositive of such due process claims").[3]  Consequently, Laidlaw has failed to plead a substantive due process violation.

Second, even if Laidlaw had a relevant property interest, it could not succeed on its substantive due process claims because none of the actors it identifies acted in an arbitrary and capricious manner.  "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999) (citing County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1716, 140 L. Ed. 2d 1043 (1998)). Even a State's arbitrary violation of its own zoning regulations does not necessarily rise to the level of outrageously arbitrary.  Cathedral Church of The Intercessor, 353 F. Supp. 2d at 385.

Laidlaw describes Defendant as engaging in an elaborate conspiracy to make worthless Laidlaw's investment in the Co-Generation Facility.  It is alleged that Ellicottville supported Laidlaw's plans until the Town began to fear that those plans might "detract[] from the Town's efforts to evolve into a fashionable ski resort."  (Comp. ¶ 39.)  From then on, Defendant allegedly manipulated zoning ordinances to force a fire sale of the facility into the hands of the Northrup Family, "a prominent and politically active family in the Town," who previously owned the facility through EEI.  (Id. ¶ 14.)

---

[3]The Court notes that Laidlaw's claimed property interest could also be defeated because of uncertainty in the underlying meaning of the relevant zoning codes.  See Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999) (noting that "if uncertainty as to the law did not preclude recognition of a federally protectable property interest, permit claimants would regularly be entitled to present to federal courts their disputes concerning the interpretation of local and state land use regulations").

Whatever the truth of Ellicottville's intentions, this Court need only consider whether the Town's decisions and interpretations of relevant statutes was so outrageous as to be a gross abuse of government authority.  Here, the Planning Board, relying on the opinions of its special counsel, found that the Co-Generation Facility's production of electricity was a non-conforming use.  The Town then determined that Laidlaw had abandoned or vacated the facility, and therefore would require new permits and variances to restart its operations.  Neither of these decisions can be said to "shock[] the conscience" or violate "decencies of civilized conduct."  <u>Watanabe Realty Corp. v. City of New York</u>, No. 01 Civ. 10137 (LAK), 2003 U.S. Dist. LEXIS 11617, at *42 (S.D.N.Y. July 10, 2003).

In <u>Harlen Associates v. Incorporated Village of Mineola</u>, the court rejected a challenge to the denial of a special use permit for a convenience store.  273 F.3d 494, 503-04 (2d Cir. 2001).  The court, in holding that plaintiff had failed the second prong of his substantive due process claim, noted that defendant "had legitimate interests which could rationally be furthered through the denial of [plaintiff's] application."  <u>Id.</u> at 505.  Here, the ZBA determined that Laidlaw's proposed changes would exceed community standards.  The ZBA also, in interpreting whether Laidlaw had abandoned its facility, noted that the Co-Generation Plan was closed, as evidenced by the fact that the natural gas turbine and two reciprocating engines were removed to on-site storage areas.  The ZBA also considered Laidlaw's argument that the kilns could not function without the power generator, but concluded that the proposed size of the modified plant was out of line with the kilns' needs.  Given this extensive analysis, backed by both case law and a factual record, the ZBA's decision is a far cry from the gross abuse necessary to constitute a constitutional violation.  <u>Crowley</u>, 76 F.3d at 52 (finding arbitrary or irrational behavior only where government acts

12

with no legitimate reasons for its decision).

Laidlaw's arguments to the contrary are based largely on its disagreement with the Town's conclusions. Laidlaw points to the fact that it maintained an employee on staff to maintain the facility, that it publicized its intention to reopen the facility, and to its copious submissions addressing all possible concerns. Nevertheless, as the court in <u>Harlen Associates</u> noted, "[t]he Board may or may not have made the right decision on the merits of the application, but that issue does not raise a federal question." 273 F.3d at 505 (citing <u>Yale Auto Parts, Inc. v. Johnson</u>, 758 F.2d 54, 58-59 (2d Cir. 1985)).

Even were the standard less stringent, the ZBA's decision would not be out of line. Simply put, Laidlaw allowed the facility to enter receivership. Laidlaw ceased producing electricity because it deemed it financially worthwhile. The facility has remained inoperative since 2003. In light of all this, the ZBA's determination that Laidlaw abandoned or vacated the facility can hardly be called arbitrary.

Laidlaw also contends, however, that the Town's ordinance was vague and ambiguous. Laidlaw argues that "[i]n labeling Laidlaw's co-generation component as an illegal non-conforming use and prohibiting its continuation, the Town interpreted a section of its Zoning Ordinance in . . . a manner which was not readily apparent . . . and which could not have been reasonably anticipated by Laidlaw." (Comp. ¶ 81.) Laidlaw specifically challenges, as unconstitutionally vague, Article 10 of the Town's zoning code, which states that a permitted non-conforming use comes to an end where the owner discontinues the use through vacancy or abandonment. (<u>Id.</u>; Plaintiff's Amended Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Am. Mem."), Docket No. 19, 21.) "A statute violates due process if its 'prohibitions are not clearly

defined.'" Cunney v. Bd. of Trs. of Village of Grand View, 675 F. Supp. 2d 394, 398 (S.D.N.Y. 2009) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)).  However, where a civil code of the type at issue is in dispute, the rigidity of the vagueness doctrine is relaxed.  See id. (citing Arriaga v. Mukasey, 521 F.3d 219, 223 (2d Cir. 2008)).  In resolving a vagueness challenge, a court must determine whether a plaintiff was put on adequate notice of the behavior required under the respective ordinances, and whether those ordinances encourage arbitrary enforcement. Cunney, 675 F. Supp. 2d at 399.

Plaintiff cites the decision in People v. Woodbury for support.  In that case a zoning provision was held unenforceable for vagueness where it stated that a nonconforming use abandoned or discontinued for 24 consecutive months could not be re-established as a nonconforming use.  97 Misc. 2d 1035, 413 N.Y.S.2d 101 (N.Y. Co. Ct. 1979).  Unlike the ambiguity alleged here, the ordinance in Woodbury was vague, not because of the underlying word "abandoned," but because it was unclear whether a nonconforming tavern, reopened within 24 months of the effective date, was prohibited.  Id. at 1037.

The Court finds the case of New Venture Realty, Ltd. v. Fennell, 620 N.Y.S. 2d 99, far more instructive.  In that case, plaintiff purchased property in a residentially-zoned area that had previously been used for the manufacture of wallpaper, a nonconforming use.  Id. at 100.  After plaintiff acquired the property, the town's planning board notified it  that the nonconforming use had been terminated because no manufacturing had taken place for over one year.  Id.  Plaintiff challenged the decision on the ground that the property continued being used for the sale and storage of  wallpaper.  Id.  The court upheld the termination, finding that the board's interpretation of "light manufacturing" as requiring

14

actual manufacturing was rational.  Id. at 101.  As in New Venture Realty, Ltd., the statute here similarly precludes continuation of a nonconforming use after a certain period. Moreover, as in New Venture Realty, Ltd., the Planning Board interpreted what activity was needed to sustain a nonconforming use.  As this Court has already explained, the ZBA's decision that Plaintiff abandoned the Co-Generation Facility was entirely rational.  "[I]f a statute has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning."  Cunney, 675 F. Supp. 2d at 400 (quoting Broche v. Westchester County, 658 F.2d 47, 51 (2d Cir. 1981)).  Laidlaw should have known that closing the facility for several years could have permanent effects on what it would be allowed to use the facility for in the future.  Cf. Town of Johnsburg v. Town of Johnsburg Zoning Bd. of Appeals, 751 N.Y.S.2d 85, 89-90 (N.Y. App. Div. 2002) (opining that discontinuance ordinance challenged as vague for failing to set time limits to enforce provisions would be upheld under standard of reasonable certainty).

Turning to Plaintiff's SEQRA-related allegations, the Court notes that a New York State Supreme Court has already found that Defendant's behavior was neither arbitrary nor capricious in the context of an Article 78 proceeding.  (Lee Decl., Ex. L.)  This Court will not second-guess that state court's findings.  See Fastag v. Kelly, No. 04 CIV 9037SAS, 2005 WL 1705529, at *6 (S.D.N.Y. July 19, 2005) (applying issue preclusion to New York court's Article 78 ruling on issue of arbitrary and capricious conduct).  This Court is satisfied that Defendant's actions in regards to Laidlaw's SEQRA application did not rise to the level of shocking, abusive, capricious, or arbitrary behavior necessary to constitute a substantive due process violation.

Having concluded that Laidlaw failed to demonstrate both a protected property

interest and arbitrary and irrational behavior, Defendant's Motion to Dismiss Plaintiff's substantive due process claims will be granted.

### 2.    Procedural Due Process Claims

Plaintiff claims it was deprived of procedural due process by the ZBA's decision regarding Plaintiff's MSPA and by the Planning Board's SEQRA Findings Statement. Defendant seeks dismissal of these claims because Plaintiff was deprived of no right, privilege or immunity, and because Plaintiff was not deprived of an opportunity to be heard.

To prevail on a procedural due process claim, a plaintiff must first establish that a defendant's actions deprived her of either a liberty or property interest recognized by law. Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994).  As already discussed, Laidlaw has failed to allege a protected property interest, and thus its procedural due process claims face dismissal.  Additionally, Laidlaw's procedural due process claims are subject to dismissal on other grounds.  "Generally speaking, a plaintiff's procedural due process rights are satisfied when a municipality's decision denying a request is preceded by notice and a hearing, and followed by a written explanation."  Palmer v. City of Saratoga Springs, 180 F. Supp. 2d 379, 386 (N.D.N.Y. 2001) (citing Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 391 (E.D.N.Y. 2000)).

Here, as to both the ZBA's and the Planning Board's decisions, Plaintiff was provided with all three, and actively participated in each proceeding.  Before the ZBA, Plaintiff argued that its proposed modification of the Co-Generation Facility was a conforming, special permitted use, that the co-generation plant was subordinated and accessory to the dry kiln operation, and that it never discontinued use of the facility.  (Lee

16

Decl., Ex. H, p. 5, 15, 21) Plaintiff submitted evidence in support of its arguments, and the ZBA clearly listed all exhibits it relied on in making its decision.  (See, e.g., id., p. 7.) Similarly, the Planning Board, in conducting its SEQRA review, considered extensive expert information submitted by Laidlaw.  It issued a 72 page written decision of its findings and decision.  (Lee Decl., Ex. J.)  In it, the Planning Board determined that while the proposed site plan for the lumber drying kilns could go ahead, the proposed biomass conversion would entail adverse environmental effects that could not be avoided or minimized by mitigating measures.  The Board specifically pointed to the increased rates of nitrogen oxide and carbon monoxide emissions under Laidlaw's proposal.  The Board also found the proposed project inconsistent with the Town's Comprehensive Plan and the general purposes of the Town's zoning codes.  Finally, Judge Frank A. Sedita, Jr., in his March 10, 2008 decision on Laidlaw's second Article 78 proceeding, specifically determined that   "[t]he board took the requisite hard look at the record and made a reasoned elaboration of the basis for its decision meeting all the SEQRA requirements." (Lee Decl., Ex. L, 39:14-18.)

Although Laidlaw variously alleges that the hearings were "insufficient and illusory" and constituted "nothing more than a sham proceeding to reach a pre-determined outcome," Laidlaw's conclusory allegations do not defeat Defendant's Motion to Dismiss where the evidence outlined above clearly shows that Laidlaw received, and participated in, hearings concluded by written decisions.  See Palmer, 180 F. Supp. 2d at 387.

Consequently, Defendant's Motion to Dismiss Plaintiff's procedural due process claims will be granted.

**C.     Plaintiff's Fifth Amendment Equal Protection Claim**

The Fourteenth Amendment provides that no state "shall deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   It is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  Laidlaw has argued that it was "selectively treated compared with others similarly situated." (Pl.'s Am. Mem. 22.)  Where plaintiffs allege selective enforcement, they must demonstrate "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as . . . malicious or bad faith intent to injure the plaintiff." Harlen, 273 F.3d at 499.[4]   The Second Circuit has noted that "cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (citing LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980)).

As already discussed, Plaintiff's complaint is filled with allegations regarding the

---

[4]The Court has considered whether Laidlaw's equal protection claims actually fall under a "class of one" theory.  To succeed on a "class of one" claim, the plaintiff must prove that (1) he has been intentionally treated differently from others who are similarly situated to him, and (2) that there is no rational basis for the difference in treatment.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).  Although the first part of this test superficially resembles the first prong of a selective enforcement claim, there is a dispute in this Circuit's district courts over whether the same standard applies to both selective enforcement and "class of one" claims. Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, No. 08-CV-156 (KMK), 2011 WL 4445626, at *11-13 (discussing disagreement and applying more demanding similarity standard for "class of one" claims).  Because this Court finds that Laidlaw is not similarly situated even under a more permissive selective enforcement standard, it need not consider whether Laidlaw would fare better under the potentially more stringent "class of one" standard.

Town's illicit motives in depriving Laidlaw of the value of its property. More important to its equal protection claim, Laidlaw accuses the Town of treating the facility's previous owners, EEI, more favorably. (Comp. ¶ 100.) This is significant because, before reaching the question of Defendant motivations, the Court must consider whether EEI was similarly situated to Laidlaw, and whether there were specific instances of differential treatment. See Ruston v. Town Bd. For Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (prior "general allegation" pleading standard superseded by Iqbal). Here, Laidlaw has shown neither.

First, Laidlaw is not similar situated to EEI. Laidlaw alleges that EEI operated the Co-Generation Facility without acquiring the necessary permits or that it was granted them upon request. Laidlaw has, by its own admission, not sought such permits or variances. It is an open question whether Ellicottville would have denied Laidlaw's applications. EEI also operated the facility continuously for several years, whereas Laidlaw shut down the facility from 2003 onwards. As this Court has found, the Town rationally determined that Laidlaw abandoned or vacated the facility. This puts Laidlaw in a context different from that of EEI because abandoning the facility alters the applicable zoning codes. It is unknown what would have happened had EEI ceased operation for several years, and then attempted to restart the facility, because the ZBA did not issue a decision interpreting the facility's conformity with local zoning codes until 2007. Consequently, EEI and Laidlaw cannot be viewed as similarly situated.

Second, Laidlaw has not identified anything that the Town granted EEI but denied Laidlaw. For example, Laidlaw claims that EEI was allowed to build a biomass gasification system, featuring a 60-foot-tall exhaust stack, as well as setup a biomass combustion

19

project utilizing wood pellets.  (Comp. ¶¶ 20, 21.)  However, the mere fact that EEI may have been operating in violation of zoning ordinances does not evidence differential treatment.   "[E]qual protection does not require that all evils of the same genus be eradicated or none at all."  LeClair, 627 F.2d at 608; see also Zahra, 48 F.3d at 684 (finding no malicious or bad faith intent to injure merely because plaintiff was cited for possible fire code violation, while four other businesses were not).   Additionally, Laidlaw does not specify which permits the Town granted, and which it denied, or when the permits were issued.  See Bishop v. Best Buy, Co., No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 31, 2010) (well-pled facts showing differential treatment remains "essential component" of equal protection claim for which conclusory allegations of selective treatment are insufficient).  Laidlaw has also not shown that it and EEI were seeking the same permits or variances.  Consequently, EEI's circumstances appear very different from those sought by Laidlaw, and, in the absence of better pled facts, act to preclude Laidlaw's equal protection claim.

Even assuming EEI and Laidlaw were similarly situated, the complaint's conclusory allegations that the Town intended to injure Laidlaw to benefit the Northrup family are insufficient to meet the selective enforcement test's second requirement.  See Cathedral Church of The Intercessor, 353 F. Supp. 2d at 383 (granting dismissal of equal protection claim where plaintiffs relied on conclusory allegations of malicious, discriminatory, and bad faith acts).  The only specific factual allegation in support of Laidlaw's equal protection claim is that the Town amended its Comprehensive Plan in 2006 , with support from the Northrup family, so that the land use pattern envisioned for the area containing the facility was not in conformance with Laidlaw's operation of the facility.  (Comp. ¶ 101.)  Similar

20

speculation was held not to defeat dismissal in <u>Toussie v. Town Bd. of Town of East Hampton</u>, No. CIVA 08-1922 DRH WDW, 2010 WL 597469, at *9 (E.D.N.Y. Feb, 17, 2010).  In that case, plaintiff alleged that defendant had targeted the plaintiff's property for acquisition and made numerous offers to purchase it.  <u>Id.</u>  The court, looking to the Second Circuit's decisions in <u>Bizzarro</u> and <u>Harlen</u>, found that plaintiff's factual allegation did not reveal any personal conflicts between plaintiff and members of the town's board, merely revealed the defendant's legitimate interests in preserving natural resources, and were, "at best, merely consistent with the Town's liability and stop[ped] short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> at *10 (quoting  <u>Iqbal</u>, 129 S.Ct. at 1949) (internal quotation marks omitted).   Similarly here, Laidlaw has not alleged any personal conflicts between the Planning Board and itself.  The fact that the Town may ultimately desire the facility's disassembling in order to promote Ellicottville's attraction as a ski resort highlights an economic, not a malicious, interest.  <u>See</u> <u>Bizzarro</u>, 394 F.3d at 87 (no constitutional violation where punishment motivated by desire to secure compliance with agency objectives).  As in <u>Toussie</u>, although these allegations may make Defendant's behavior compatible with acts intended to injure Laidlaw, they do not make them more plausible.

Consequently, Defendant's Motion to Dismiss Plaintiff's equal protection claim will be granted.


## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:          October 16, 2011
                Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court